# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**RANDAL W. VALENTINE,**
**Claimant Below, Petitioner**

**FILED**
**February 15, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 22-ICA-101**        (BOR Appeal No. 2058202)
                                (JCN: 2021004632)

**HOWARD CONCRETE PUMPING CO., INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Randal W. Valentine appeals the August 19, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent Howard Concrete Pumping Co., Inc. ("Howard") filed a timely response.[1] Petitioner did not file a reply brief. The issue on appeal is whether the Board erred in affirming the April 21, 2022, decision of the Workers' Compensation Office of Judges ("OOJ") that affirmed the claim administrator's June 8, 2020, order rejecting Mr. Valentine's claim for occupational hearing loss.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Valentine, a long-time heavy equipment operator, alleges he was exposed to harmful levels of noise during all of his years of employment. He claimed his date of last exposure was October 17, 2017, his last date of employment with Howard. He worked at Howard beginning October 4, 2017, operating a rubber-tired "loader," setting hoppers and loading them with fly ash to be pumped into mine shafts. Mr. Valentine testified that he was exposed to multiple sources of occupational noise while working for Howard, including from the loader, the pumping machine, and the vibrators on the fly ash bins. He also testified that he had worked for twenty-three or twenty-four different companies during his career, all of which involved operating heavy equipment, and all involved exposure to significant levels of noise.

---

[1] Petitioner is represented by J. Thomas Greene, Jr., Esq. and T. Colin Greene, Esq. Respondent is represented by T. Jonathan Cook, Esq.

1

Mr. Valentine signed an Employees' and Physicians' Report of Occupational Hearing Loss on February 26, 2020. The February 2020 audiology assessment he submitted showed a four-frequency summary decibel level of 135 in his right ear for both air and bone, and a left ear air score of 325, with no response for bone conduction study. His speech discrimination was 100% at 60 dB in his right ear, and 72% at 95 dB in the left. The audiologist found him to have a 15.9% whole person impairment.

On June 8, 2020, the claim administrator denied the claim on the basis that Mr. Valentine had not sustained an injury in the course of and resulting from his employment. Mr. Valentine protested the decision.

At his deposition on December 11, 2020, Mr. Valentine testified that he had been exposed to excessive noise during his career as a heavy equipment operator for over forty years. He stated that he was evaluated in April of 2017 and was told that the cause of his hearing loss was inconclusive but was connected to occupational noise exposure. He testified that his doctors initially thought his hearing loss might have been related to medication he was prescribed for non-Hodgkin's lymphoma, but they later decided it was most likely related to noise exposure. Mr. Valentine explained that his last place of employment where he was routinely exposed to hazardous noise levels was at Howard, and he had not worked anywhere else since.

David Phillips, M.D., performed a record review on behalf of Howard on September 15, 2021, and opined that Mr. Valentine had no permanent impairment from occupational noise exposure. Dr. Phillips noted that Mr. Valentine was treated in 2017 at West Virginia University for right sided eustachian tube dysfunction. Dr. Phillips observed that there was no discussion of occupational noise induced hearing loss in those treatment records. Dr. Phillips also reviewed audiograms dated April 3, 2017, and April 30, 2018, as part of his evaluation, along with related medical records. He noted that in a record dated April 30, 2018, Mr. Valentine's treating physician documented significant change in hearing in only his left ear and it appeared that the treater's concern related to the asymmetry that developed between his two ears and how it might relate to claimant's history of mantle cell/non-Hodgkin's lymphoma, either from the treatment with potentially toxic medications or from the disease progression itself, not from occupational hearing loss. Dr. Phillips also reviewed the technical specifications for the cab wheel loader that Mr. Valentine operated during his employment at Howard and determined that the sound exposure level was 74 dB when tested with the doors and windows closed, whereas occupational noise induced hearing loss is mostly associated with a continual steady state noise exposure at 85 dB or greater.[2] Dr. Phillips opined that exposure to noise less than 85

_____

[2] In May 2021, Howard conducted noise monitoring testing on the equipment that Mr. Valentine operated during his employment. Per the related documents, submitted into the appendix record by Howard, it appears that the decibel levels remained at or below 85 dB during those testing periods, though it is not clear whether those tests included the

dB would not be expected to cause asymmetric hearing loss like Mr. Valentine's. Dr. Phillips conceded that Mr. Valentine has hearing loss in his right ear that could reasonably be attributed to occupational noise, but he opined that the hearing loss in his left ear should not be attributed to occupational hearing loss due to the severe to profound levels of loss. He further opined that the ascending low frequency loss in the right ear should not be attributed to occupational noise as occupational noise does not cause that type of loss. Finally, he opined that even if Mr. Valentine were exposed to 85 dB or greater continual steady state noise, the short two weeks of exposure at Howard's job site would not cause the hearing loss shown on Mr. Valentine's audiogram. Consequently, Dr. Phillips disagreed with the calculations performed by the audiologist who prepared the audiology assessment on Mr. Valentine's Employees' and Physicians' Report of Occupational Hearing Loss after the February 17, 2020, audiogram wherein she documented a 15.9% whole person impairment. Dr. Phillips stated that he would have used only the right or better-hearing ear for the purposes of evaluating impairment and would have also used April 30, 2018, testing results for comparison purposes, resulting in a zero percent whole person impairment for occupational hearing loss. Dr. Phillips predicated this approach on his observation that Mr. Valentine's right ear hearing loss progressed between the April 30, 2018, audiogram and the 2020 audiogram, which could not be attributed to occupational noise as Mr. Valentine was no longer working. He also opined that the significant decline in Mr. Valentine's left ear was not related to occupational noise and should not enter into any calculations.

By order dated April 21, 2022, the OOJ affirmed the claim administrator's order rejecting the claim for occupational hearing loss, concluding that Mr. Valentine did not prove by a preponderance of the evidence that the claim administrator erred in rejecting the claim as there is no medical evidence that Mr. Valentine has a sensorineural hearing loss attributable to his occupational noise exposure. The OOJ's decision noted that Section II, Part B of the Employees' and Physicians' Report of Occupational Hearing Loss form, which requested information that must be answered by an otologist, otolaryngologist, or E.N.T. physician regarding the cause of the hearing loss and the percentage of impairment due to work-related noise exposure, was left blank. Furthermore, the recommended percentage of impairment based on the 2020 audiogram was completed by an audiologist, whereas West Virginia Code of State Rules § 85-20-47.1 (2006) provides that only physicians who are qualified otologists or otolaryngologists may interpret the results of audiograms in assessing the degree of noise induced hearing loss impairment. In contrast, Dr. Phillips, an otolaryngologist, found that the right ear progression that went from no impairment in the 2018 audiogram to 4.4% impairment in the 2020 audiogram cannot be attributable to occupational noise as Mr. Valentine was not working during that time period. Consequently, the OOJ found that the evidentiary record did not establish that Mr.

---

decibel levels of the loader, the pumping machine, and the vibrators on the fly ash bins as Mr. Valentine alleges these were all sources of noise during his employment.

Valentine had a sensorineural hearing loss directly attributed to or perceptibly aggravated by industrial noise exposure. By order dated August 19, 2022, the Board affirmed the decision of the OOJ. It is from the Board's order that Mr. Valentine appeals herein.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-12a(b) (2022), as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1)    In violation of statutory provisions;
> (2)    In excess of the statutory authority or jurisdiction of the Board of Review;
> (3)    Made upon unlawful procedures;
> (4)    Affected by other error of law;
> (5)    Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6)    Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, No. 22-ICA-10, __ W. Va. __, __, __ S.E.2d __, __, 2022 WL 17546598, at *4 (Ct. App. Dec. 9, 2022).

On appeal, Mr. Valentine argues that his forty-year career as a heavy equipment operator caused him hearing loss, and that his last job at Howard exposed him to excessive noise at the job site. He asserts that even Dr. Phillips conceded that Mr. Valentine's right ear impairment would reasonably be attributed to occupational noise. Mr. Valentine argues that under West Virginia's chargeability law, Howard may be the sole chargeable employer responsible for his hearing loss claim, and therefore the Board erred when it affirmed the denial of the claim.

Upon review, we disagree. The evidence of record indicates that Mr. Valentine's Employees' and Physicians' Report of Occupational Hearing Loss form was submitted without being properly completed by appropriate credentialed medical practitioners. Section II, Part B of the form, which instructs the physician to certify whether the claimant has a bilateral sensorineural hearing loss directly attributable to or perceptibly aggravated by industrial noise exposure in the course of and resulting from his/her employment, was left entirely blank. Other important information related to the claim, including employment history, was also omitted. Workers' compensation treatment guidelines provide that a

4

physician must examine and evaluate an injured worker in a noise-induced hearing loss claim and consider the worker's medical and occupational history, as well as available audiograms, in determining the etiology of the hearing loss. W. Va. Code R. § 85-20-47.2. Furthermore, the West Virginia Compensation Formula for Occupational Hearing Loss forms that Mr. Valentine submitted, which reported a 15.9% impairment based on the February 26, 2020, audiogram and a 2.9% impairment based on the April 3, 2017, audiogram, do not appear to have been completed by an otologist or otolaryngologist but by Mallory Powell, Au.D., a clear violation of West Virginia Code of State Rules § 85-20-47.1. In fact, there is no evidence in the record that any physician examined or evaluated Mr. Valentine's hearing loss claim prior to its submission, let alone certified that he sustained occupational hearing loss. On that basis alone we find no reversible error in the OOJ and Board's conclusion that denial of the claim was appropriate, as there is no medical opinion that Mr. Valentine has a sensorineural hearing loss attributable to his occupational noise exposure. Consequently, it is not necessary to address the parties' arguments as to whether Mr. Valentine was exposed to hazardous levels of noise while employed at Howard or regarding chargeability.

Accordingly, we affirm the Board's August 19, 2022, order.

Affirmed.

**ISSUED:** February 15, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

5